PRUDENTIAL INSURANCE COMPANY OF AMERICA, a foreign corporation authorized to do business in the State of Florida, Plaintiff-Appellee,

v.

Angela J. LOYD, et al., Defendants-Appellants.

No. 83–3053.

United States Court of Appeals, Eleventh Circuit.

April 9, 1984.

Robert G. Murrell, Orlando, Fla., for defendants-appellants.

Donald L. O'Dell, Orlando, Fla., for plaintiff-appellee.

Before FAY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Prudential Insurance Company filed this interpleader action in the United States District Court for the Middle District of Florida to determine the lawful widow of Robert Loyd and thus the beneficiary of his Servicemen's Group Life Insurance Program policy. The sole issue in the district court and before us is the effectiveness of two Georgia divorce decrees. The district court concluded that Angela Loyd, the second wife, was the lawful widow of Robert Loyd. The first wife, Patricia Loyd, appeals from that decision. Disagreeing with the district court's application of Georgia law to the facts of this case, we reverse.

Patricia Loyd married Robert Loyd on March 28, 1973, in Orlando, Florida. Three

appealable finality stands as a bar to our review of the Board's order.

children were born as the issue of that marriage. Patricia is the guardian of the children. Robert was a member of the United States Air Force, stationed in North Carolina when the couple last lived together. Because of marital problems, Patricia and the children left North Carolina to live with Patricia's mother in Orlando. Robert occasionally visited them in Florida.

In January, 1977, Robert, a Georgia resident, filed suit for divorce in the Superior Court of Rockdale County, Georgia. Service was made by publication, as permitted by Georgia law. A copy was mailed to Patricia in Florida at her last known address. She denied receiving the notice. The first publication was issued on October 7, 1977. Georgia law provides that in divorce cases where service is perfected by publication, the case "shall be triable any time after sixty days have elapsed since the date of the first publication." Ga.Act No. 1420, H.B. No. 1674, § 1 (April 7, 1976). The judge of the superior court signed the decree on November 18, 1977, only forty-three days after the first publication. The decree was not filed with the clerk, however, until December 21, 1977, more than sixty days after the initial publication. Robert and Angela Loyd obtained a marriage license on December 20, 1977 and were married in North Carolina eight days later.

R.A. Barksdale, the attorney who represented Robert in the divorce proceedings, believed that the service of process was defective. In an effort to cure this infirmity, Barksdale requested another judge of the same court to vacate the November 18, 1977 judgment. The judgment was vacated on January 6, 1978 by a handwritten order on the back of the decree. On the same day, apparently without hearing any evidence or giving any notice to Patricia, the second judge issued a new divorce decree.

Robert designated the proceeds of his $20,000.00 insurance policy to be paid "by law." Under the statutory preference, the serviceman's widow is the initial beneficiary. 38 U.S.C. § 770(a) (1976). A widow is "the lawful spouse of the insured member at the time of his death." 38 U.S.C. § 765(7) (1976). If there is no widow, the proceeds are paid to the children of the deceased. 38 U.S.C. § 770(a) (1976).

As noted earlier, the district court held that the first divorce decree was valid and awarded the insurance proceeds to Angela. Construing Georgia law, the court was of the opinion that a judgment becomes effective only when it is filed with the clerk of the court. O.C.G.A. 9–11–58(b) (1982). The order of November 18, 1977 was filed after the required sixty days. Thus finding the first decree to be valid, the court reasoned that the act of setting aside the first decree and the entry of the second divorce judgment were unnecessary and could "be treated as surplusage." Opinion at 7.

■ Under the Georgia statute, a divorce case is "triable" only after sixty days have elapsed since the first notice by publication. However, the state judge heard the evidence and signed the decree granting Robert's petition for a divorce before the case was ready for trial. In fact, the judge acted before the due date of Patricia's answer. O.C.G.A. § 9–11–4(e)(1)(C) (1982). If Patricia had desired to contest the divorce, she would have had no opportunity to do so. Merely filing a void judgment with the clerk of the court does not make it valid. By using the word "triable", the Georgia legislature expressly intended to delay the trial or the hearing until sixty days after the initial publication. The date of the filing of the decree with the clerk of the court is not controlling.

Angela contends that even assuming the case was heard prematurely, the original divorce decree is only voidable and not void, citing *Lewis v. Lewis*, 213 Ga. 856, 102 S.E.2d 559 (1958). We disagree. If the decree was only voidable, the state court later did in fact declare it void by vacating it.

■ Having determined that the original decree did not effectively dissolve the marriage between Robert and Patricia, we

next examine the legal consequences of the purported marriage of Robert and Angela. The law of North Carolina, where the marriage took place, provides that "[a]ll marriages ... between persons either of whom has a husband or wife living at the time of such marriage ... shall be void...." N.C. Gen.Stat. § 51–3 (1976). *See Redfern v. Redfern,* 49 N.C.App. 94, 270 S.E.2d 606 (1980). Angela and Robert, therefore, could not enter into a valid marriage contract under the laws of North Carolina. North Carolina also does not recognize common law marriages. *Shankle v. Shankle,* 26 N.C.App. 565, 216 S.E.2d 915, *cert. denied* 288 N.C. 394, 218 S.E.2d 467 (1975). Nor does the second divorce decree furnish a legal basis for the subsequent marriage of Robert and Angela because that judgment also was invalid. After vacating the original order, a second judge issued a new decree without taking any testimony, conducting a hearing, examining any evidence, or publishing additional notice. In addition, even assuming that the second court had jurisdiction, that judge could not grant a divorce without at least first hearing evidence to authorize the divorce.

> While there is no judgment by default in a divorce case, [Ga.Code § 30–129][1] means no more than that in any divorce case where no defensive pleadings are filed it is incumbent upon the trial court to hear evidence in support of the plaintiff's grounds of divorce and make an affirmative finding therefrom that the grounds are legal and are sustained by proof.

*Harris v. Harris,* 228 Ga. 562, 563, 187 S.E.2d 139, 140 (1972). Because there could have been no valid divorce as a result of the second decree, Patricia was still legally married to Robert at the time of his death and she is entitled to the proceeds of the insurance policy.

Accordingly, the judgment of the district court is REVERSED and the case RE-

MANDED to the district court for the entry of a judgment in favor of Patricia.

---

1. Section 30–129 has been recodified as O.C.G.A. § 19–5–10 (1982) which provides:

   In divorce cases which are not defended by the responding party, the judge shall see that the asserted grounds for divorce are legal and sustained by proof or shall appoint the district attorney or some other attorney of the court to discharge that duty for him.