BELVA ELIZABETH BRADLEY HOWARD, JOSEPH B. HOWARD, CAROLYN HOWARD PRICE, LINDA HOWARD HAYNES, BILLY HOWARD, BRUCE HOWARD, BELVA HOWARD SMELTZER, NANCY HOWARD DOTSON AND DAVID HOWARD v. MONA HOWARD SHARPE, JIMMY ROGER HOWARD, VERA HOWARD, AND RENEE BARTLETT, ADMINISTRATRIX OF THE ESTATE OF WILLIAM ESLEY HOWARD, DECEASED

No. 8328SC256

(Filed 3 July 1984)

**Marriage § 2— sufficiency of evidence of marriage**
     The evidence was sufficient to support the jury's finding that plaintiff was the lawful wife of the deceased where it tended to show that plaintiff and

deceased held themselves out to the community as being married; they told other persons that they had become married; plaintiff and deceased sold property together, executed deeds of trust together, maintained joint bank accounts, filed joint tax returns, and owned joint cemetery lots; and plaintiff quit her job in order to stay home with the deceased and care for him in the last few months of his illness.

APPEAL by defendants from *Lewis, Judge.* Judgment entered 8 October 1982 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 8 February 1984.

This action was instituted by plaintiff, Belva Elizabeth Bradley Howard and her eight children, allegedly fathered by William Esley Howard, the deceased, against Renee Bartlett, Administratrix of the Estate of William Esley Howard, deceased and the three children (Mona Howard Sharpe, Jimmy Roger Howard, and Vera Howard) born of the marriage between the deceased William Esley Howard and Kathryn Redmond. By their complaint, plaintiffs sought to have Belva Elizabeth Bradley Howard (hereinafter "Belva") declared the lawful wife of William Esley Howard (hereinafter "the deceased") and that real property held by Belva and the deceased at the time of his death be declared property held by the entirety and that Belva be declared the sole owner. From a jury verdict and judgment that Belva was the lawful wife of the deceased as alleged in the complaint, defendants appeal.

*Lentz, Ball and Kelley, P.A., by E. L. Ball, Jr., and Gudger, Reynolds, Ganly and Stewart, P.A., by Joseph C. Reynolds, for plaintiff appellees.*

*Bruce J. Brown, for defendant appellants.*

JOHNSON, Judge.

The evidence in this case is uncontradicted and shows the following: The deceased and Kathryn Redmond were married to each other in 1945 and three children were born of this union, defendants: Mona Howard Sharpe, Jimmy Roger Howard, and Vera Howard. In June of 1948, the deceased and Kathryn Redmond separated. Belva and the deceased commenced living together sometime in 1948 and lived together until the deceased's death in May, 1981. The deceased and Kathryn Redmond were divorced on 25 July 1959. Belva testified that she and the deceased

were married to each other in October, 1959 in South Carolina. Irene Howard Owenby, the sister of the deceased, testified that in a conversation she had with the deceased in 1958 or 1959, while the deceased was living with Belva and before he divorced Kathryn Redmond, the deceased told her that as soon as he obtained his divorce from Kathryn he and Belva were going to get married. Melva Bradley testified that at or about 9 a.m. on the 28th or 29th of October, 1959, the deceased asked her and her husband to keep the children so that he and Belva could go to South Carolina to get married. Belva and the deceased returned late in the evening and thanked them for keeping the children. Belva showed her a piece of paper and said, "this is our marriage certificate." There was further evidence presented tending to show that Belva and the deceased held themselves out to the public as husband and wife; that they had the reputation of being married; that they bought and sold property together; executed deeds of trust together; maintained joint bank accounts; filed joint tax returns; owned joint cemetery lots; and that Belva quit her job in order to stay home with the deceased and care for him in the last few months of his illness. Plaintiffs introduced birth certificates of the children allegedly fathered by the deceased. Each certificate lists plaintiff Belva as the mother and the deceased William Esley Howard as the father of the following children:

> Nancy Irene Howard
> David Wayne Howard
> Carolyn Beatrice Howard
> Billy Esley Howard
> Linda Geraldine Howard
> Bruce Johnson Howard

Defendants introduced into evidence two birth certificates of plaintiff Joseph B. Howard. The first certificate lists the child's name as Joseph Burt Anderson, the father as Napoleon Odell Anderson and Belva Elizabeth Bradley as the mother. The other certificate, which is a delayed certificate of birth, lists the child's name as Joseph Burton Howard, the father as William Esley Howard and the mother as Belva Elizabeth Bradley. In addition, defendants introduced two documents for the limited purpose of demonstrating the extent of their unsuccessful efforts to locate a copy of the purported marriage certificate of Belva and the deceased from the appropriate South Carolina officials.

By defendant appellants' first, fifth, sixth, seventh and eighth assignments of error they present questions for review concerning the sufficiency of the evidence to take the case to the jury and to support the jury's finding that plaintiff Belva Elizabeth Bradley Howard is the lawful wife of William Esley Howard.

The defendants contend that the plaintiffs have produced no direct, nor any competent, evidence of a marriage between plaintiff Belva and the deceased. The law of North Carolina is well settled on this subject and is aptly stated by Robert E. Lee, who writes:

> If two persons live together as husband and wife, holding themselves out to the public as such, and gain the reputation in the community as being married, there arises a rebuttable presumption of a valid marriage. [Par.] [Such a presumption may be established by proof of] general reputation that the parties were husband and wife.

1 Lee, North Carolina Family Law 4th, § 15, Presumption of Validity, at 55; *See Green v. Construction Co.*, 1 N.C. App. 300, 161 S.E. 2d 200 (1968); *Shankle v. Shankle*, 26 N.C. App. 565, 216 S.E. 2d 915, *cert. denied*, 288 N.C. 394, 218 S.E. 2d 467 (1975); and *Chalmers v. Womack*, 269 N.C. 433, 152 S.E. 2d 505 (1967).

The Supreme Court in *Chalmers* held that a second or subsequent marriage is presumed legal until the contrary be proved, and he who asserts its illegality must prove it. 269 N.C. at 436, 152 S.E. 2d at 507. The court noted further that legality or illegality of the second or subsequent marriage is always one for the jury, even though the evidence may be uncontradicted. *Id.*

In *Green*, this court found there was sufficient competent evidence that plaintiff was married to the deceased because of independent testimony that the deceased had claimed plaintiff on his income tax form and that the deceased had told him that plaintiff and he were married by a minister. 1 N.C. App. at 303, 161 S.E. 2d at 202-203.

In this case there was evidence that Belva and the deceased held themselves out to the community as being married; that they told other persons they had become married; and that the deceased and Belva filed joint tax returns.

Similarly, in *Shankle*, the proponent of the marriage offered circumstantial evidence of the intentions of the parties to become married; that the parties lived together and held themselves out as married to the public; that they had the reputation of being married; and that the wife was with the deceased husband during his last illness in the hospital. 26 N.C. App. at 567, 216 S.E. 2d at 917. The court held that circumstantial evidence is sufficient to prove a ceremonial marriage despite the lack of direct evidence. *Id.* at 568-569, 216 S.E. 2d at 918-919.

Such evidence has been presented in the case *sub judice*. Several independent witnesses testified as to Belva and the deceased's reputation in the community as husband and wife. There was additional competent evidence that Belva and the deceased bought and sold property, executed deeds of trust, had joint bank accounts, filed joint income tax returns and owned joint cemetery lots. In other words, they lived together as husband and wife in all respects.

Accordingly, there was sufficient evidence to support the trial court's submittal of the case to the jury and the jury's finding that there was a valid marriage between Belva and the deceased.

We have carefully examined the defendants' remaining assignments of error and find them to be without merit.

In the trial of this case we find no prejudicial error.

No error.

Chief Judge VAUGHN and Judge WEBB concur.